Plaintiff, while performing the duties of a contract of hiring with the defendant, International Paper Company, lost his balance and fell a distance of eight feet upon a concrete floor. Injuries from the fall totally disabled him to continue work and he was paid compensation at the rate of Twenty ($20) Dollars per week until January 24, 1947, a period of some twenty weeks. Payments were discontinued because the attending physician was of the opinion that he was physically able to resume work. This suit was soon thereafter filed.
One question only is tendered, and that is whether plaintiff's physical condition is such that he can do work that requires manual labor. He alleges that he fell upon the lower part of his back, right hip and leg, from the effects of which he sustained permanent injuries to and impairment of his lumbar vertebrae, sacroiliac area, and of the nerves, ligaments and muscles of those regions. He sued to recover compensation at the rate of Twenty ($20) Dollars per week for four hundred weeks, less payments made.
Defendant denies that plaintiff's injuries were nearly so serious as by him alleged, and resists the suit on the ground that he has fully recovered from the effects thereof, and, therefore, is able to perform work of the character he was able to perform prior to the time of the accident. Defendant also avers that plaintiff was not cooperative with the physicians who examined and attended him immediately after the accident. But, it is not alleged that such attitude on his part delayed recovery by him.
Plaintiff prevailed in the lower court and from judgment as by him prayed, defendant appealed.
The fall rendered plaintiff unconscious for a few minutes. He landed upon his right leg, hip and side. Application of cold water to his face quickly revived him. He was then assisted by two employees to the first aid station, a distance of approximately one-fourth of a mile, and was there placed in charge of the attending nurse. He then complained of pain in those portions of the body upon which he fell. The nurse prepared and applied a cast of some sort and immediately thereafter she directed him to go to Dr. Gray's office in Springhill, Louisiana, some two miles distant. He did so and X-ray pictures were promptly made The record does not contain these pictures nor was testimony adduced as to what they disclosed. After remaining in a room at the clinic some four hours and tiring of loneliness and, as he says, a lack of attention, he called a taxi and drove to the office of Dr. Horn in Taylor, Arkansas, seven miles away. He, of his own volition, selected Dr. Horn, who has no connection with defendant. This doctor gave him some medicine, had X-rays made of his back, hip, etc., and taped the back. Physical examination revealed contusion on the right leg and hand. The X-rays revealed fracture of the rim of the acetabalum only. This is the circular bone of the socket into which the ball of the femur fits.
Dr. Horn had another cast applied and, without consulting the doctor, plaintiff left the clinic the following morning. Soon thereafter, also without the doctor's knowledge and consent, he removed the cast. However, he was seen professionally by Dr. Horn at intervals thereafter and finally discharged as being able to resume work on January 24th.
Plaintiff, after being discharged by Dr. Horn, engaged counsel to prosecute his claim for compensation and he was thereafter physically examined by four physicians who testified in his behalf and by two physicians and one roentgenologist, who testified on behalf of defendant. There is, as we have many times regretfully observed, *Page 793 
hopeless conflict and contradiction in the opinions of these professional men as to the nature and extent of plaintiff's original injuries, and as to his physical condition as reflected by the X-ray pictures.
The physicians who testified for plaintiff found that the fourth lumbar vertebra had been fractured and that this and other evidence of traumatism about this vertebra disabled plaintiff to follow the character of work he was doing when hurt. Physicians who gave testimony for the defendant, including Dr. Horn, disagree generally with the opinions and conclusions of the physicians who testified for plaintiff. One of defendant's doctors qualified his opinion of plaintiff's disability to work by stating that he should be able to do light work. All of the doctors who gave testimony touching same, were of the opinion that an injury to the rim of the acetabulum was not a serious one; and that, under appropriate treatment, it would soon heal without disabling results.
Dr. W.L. Smith of Monroe, Louisiana, the only physician that testified who could be rated as an expert in the taking and interpretation of X-rays, did not find the fracture of the fourth vertebra and other evidence of traumatism that plaintiff's physicians found.
This court has often in cases of this character, wherein the expert testimony was found to be in irreconcilable conflict, pitched decision upon the lay testimony. We believe this course to be justified in the present case.
The work plaintiff was doing when injured did not require the utmost physical effort. It did require that he stand upon his feet and use his hands. He was not what might be termed a professional laborer at public works. Over a period of several years, at intervals, he would resort to this sort of work but he owned a farm and, as we interpret his testimony, did not abandon the same as a contributing factor to the support of himself and family while working for others. Dr. Horn drove by this farm quite often.
We are convinced that plaintiff, at the date of trial and prior, was well able to carry on his farming operations and that he did so after being discharged by Dr. Horn in January to the time of the trial of the case in April following. If he is able to do this kind of work, certainly he is able to do the work he was performing when injured. His farm adjoins a public highway. Two witnesses, besides Dr. Horn, while passing the farm, observed him plowing and dragging the land with a pair of mules. Dr. Horn saw him frequently plowing the land and performing acts that required him to stoop and otherwise exercise his body. The doctor testified that occasionally one or more of plaintiff's sons was about him while working, but more often than not he was working alone.
Plaintiff admits that he plowed some, but says that because of pain in his back he could do so for only brief periods. He testified that the burden of the work was done by his three boys, one of whom is of age; that he, in a way, supervised their work. But it is significant that not one of the sons was offered as a witness to support what plaintiff says in this regard.
As before stated, Dr. Horn so far as the record discloses, is under no obligation whatever, contractual or otherwise, to the defendant who paid him for his services to the plaintiff. As said before, plaintiff of his own accord put his case in Dr. Horn's hands. Therefore, there exists no reason whatever for the doctor to color his testimony in the least nor is there any reason why his testimony should not be accepted at face value; and, when we do this, the conclusion is inescapable that plaintiff has fully recovered from his injuries.
The only question tendered in this case is one of fact, and for this reason we are reluctant to reverse the learned trial judge, but, after a careful study of the testimony in the case, we find ourselves unable to agree with him.
And, for the reasons herein assigned, the judgment appealed from is annulled, reversed and set aside and plaintiff's suit is dismissed at his cost. *Page 794